By the Court.
The council of the city of Cincinnati on February 10, 1914, adopted a resolution requesting the Public Utilities Commission to investigate and ascertain the value of the public utilities furnishing electricity in the city of Cincinnati and vicinity, and useful for the service and convenience of the public, for use. by the city iq the framing of a new ordinance fixing maximum rates which might be charged after the expiration of the existing agreement between the parties.
Pursuant to the provisions of Section 499-8, General Code, the commission ordered the companies referred to, to-wit, The Cincinnati Gas & Electric Company and The Union Gas & Electric Company, to file a valuation of their electrical properties with the commission, as of date April 1, 1914. The order contained a schedule indicating the classifications which were to be made of the property and the general method to be followed in its inventory and valuation. Pursuant to this order the companies filed, as of the date referred to, their valuation of their property used in the electrical service.
On June 3, 1915, the commission made what is denominated in its record as a tentative valuation, notice of which was given to the parties as provided by Section 499-12, General Code. The tentative value so fixed was $8,451,579.89. The company in its report to the commission stated the value of the property to be $21,049,681. The city also made an appraisement of the property; but did not file the same, nor formally introduce any portion of it in evidence. It was, therefore, not be *556 fore the commission for its consideration. The companies and the city filed protests against the tentative valuation fixed by the commission.
Numerous hearings were had and a vast amount of written, and oral evidence introduced, consisting of many schedules, inventories, appraisements and reports.
The commission, after considering this mass of evidence, on the 8th day of September, 1916, caused an entry to be made on its records fixing the final valuation of the property concerned at $8,945,-215.46. Applications for a rehearing were overruled and this proceeding is brought to set aside, reverse, vacate and modify that order.
Counsel for defendant in error point out -that the previously existing rate ordinance of the city council expired November 13, 1914, and that the commission’s valuation was not ready in time to adopt a new rate ordinance in accordance with that valuation; that, therefore, without waiting for the valuation to be completed,' the council adopted a ten-year rate ordinance on July 6, 1915, which was approved by the electors at a referendum election on November 2, 1915; and that this ordinance is now effective and this proceeding in error is, therefore, moot.
As already stated, the valuation by the commission was made pursuant to the provisions of Section 499-8 et seq., General Code. Section 499-8 authorizes the valuation “for the purpose of ascertaining the reasonableness and justice of rates and charges for the service rendered by public utilities * * * or for any other purpose authorized by *557 law.” Section 499-9, General Code, provides that “Such investigations and reports shall show separately the property used and useful to such utility * * * which said inventories and reports shall be filed in the office of the commission for the information of the governor and the general assembly.” The succeeding sections provide that the commission shall keep itself informed through its engineers, experts and other assistants of all extensions, improvements and other changes in the conditions and value of the property, and shall, from time to time, as may be required for the proper regulation of such public utilities or railroads, revise and correct its valuations of property. Section 499-11, also, provides that such revisions and corrections shall be filed in the same manner as is provided for original reports.
It is, therefore, clear that the valuation and the proceedings by the commission were not confined to the limited purposes suggested.
As already observed the finding of the commission was based upon reports, inventories, schedules and testimony of experts and other witnesses. The commission felt compelled to rely upon expert witnesses as to the best methods to be followed in estimating property of the character involved in this proceeding. The commission states that in ascertaining the value of the physical property other than land, the cost of new production as of a date certain (in this case-April 1, 1914), together with the values of the separate items comprising the property and the unit basis of such valuation, was first ascertained. The depreciation ' *558 on account of the existing mechanical deterioration, for age, for obsolescence, for lack of utility, or for any other cause, was ascertained by actual inspection of-the unit by the commission’s engineers. In the case of meters, transformers and underground conduit, where it was impracticable to make a complete actual inspection, the depreciation was based on the usual or ordinary life tables applicable to this class of property. By this method the commission’s engineers necessarily considered the service condition of the plant in arriving at the amount of depreciation that should be assigned to the different units, which is reflected in the final report.
The commission states that it was determining the cost of new production of the property, the existing depreciation, and thus arriving at the present or net value of the same, and was not called upon or attempting to fix a rate of return.
It concludes, “We believe the method pursued in ascertaining the value of the property is in accordance with the laws of this state and governs the commission in arriving at its final conclusion.”
Counsel for the plaintiff in error have filed a very exhaustive brief in which all of the many items included in the valuation are examined. The infirmities which are claimed to affect the different valuations are ably set forth.
After a careful examination of the briefs of counsel, together with such references to the voluminous record as we have been able to make with the assistance of references made thereto contained in the briefs, we are not able to say that *559 the order of the commission was' unlawful or unreasonable in the main.
As stated, the valuation is shown under many heads. Most of these items seem to be justified by the testimony of those whose business it is to make such matters the subject of scientific research. Their testimony discloses that the results have been obtained by following accepted methods. There is, however, one item included in the final summary which we' do not think is justified, the item is scheduled “cost of attaching business $375,-000.” It is conceded that this item represents the cost of acquiring customers for the company.
The nature of these services is described in detail by the witnesses, and the services are said to constitute a proper item in the making up of the cost of the property of a public utility, upon which the companies owning the same are entitled to be paid.
The placing of a value upon such an item to be included in the permanent capitalization of a company, which is to be used for the purpose of fixing rates to be paid by the public during long periods of time, is necessarily uncertain, theoretical and somewhat arbitrary. The engineer of the commission, himself, testified that the amount fixed was his estimate of what it would probably cost to secure a given number of customers. It is apparent that such customers would have to be secured under varying circumstances, which, when estimated in advance, would be purely hypothetical. ■
The burden of proof was upon the companies to establish this item by direct evidence. We think *560 this was not done in this case, and the order of the commission in so far as that item is concerned is disapproved. The order will be modified in the respect indicated.

Order modified.

Nichols, C. J., Wanamaker, Newman, Jones, Matthias and Johnson, JJ., concur.